UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

          Case No. 05-CR-80337
          HON. GEORGE CARAM STEEH

HERMAN NORMAN JOHNSON,
a/k/a HERMAN DAVIS,

      Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION
## FOR DISCLOSURE OF ITEM NO. 26 (# 92)

Defendant Herman Johnson moves for disclosure, as Item No. 26, of any information suggesting that murder victim Waad Murad consented to the criminal conduct which lead to his death, including all evidence of Murad's criminal conduct such as DEA-6 and FBI 302 reports. A hearing on 29 separate discovery items was held on February 6, 2008. Following the hearing, the court took Johnson's motion for disclosure of Item No. 26 under advisement and permitted Johnson to file a supplemental brief. February 15, 2008 Order, at 10-11. Johnson filed a supplemental brief on March 6, 2008, and the Government filed a response on March 17, 2008.

Johnson's motion for disclosure is premised on 18 U.S.C. § 3592(a)(7), which provides:

> **(a) Mitigating factors.** -- In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including the following:
>
>             \*      \*      \*
>
> **(7) Victim's consent.** -- The victim consented to the criminal conduct that

resulted in the victim's death.

Johnson argues that Murad increased his risk of being murdered by consenting to the criminal conduct of laundering illegal drug proceeds, conduct that ultimately resulted in his death. The Government responds that it has no evidence that Murad consented to the criminal conduct that resulted in his death, being shot in the back of the head. Johnson relies on United States v. Johnson, 403 F.Supp.2d 721 (N.D. Iowa 2005), aff'd in part, 495 F.3d 951 (8th Cir. 2007), United States v. Stitt, 250 F.3d 878 (4th Cir. 2001), and United States v. Flores, 63 F.3d 1342 (5th Cir. 1995) to support his position that Murad's consent to be involved with drug trafficking resulted in his murder, and is a mitigating factor under § 3592(a)(7).

In Johnson, the defendant was convicted on five capital counts of aiding and abetting murder in furtherance of a "continuing criminal enterprise" (CCE). Johnson, 495 F.3d at 957. 21 U.S.C. § 848(m)(9), applicable to capital CCE murder convictions at the time[1], provided:

> (m) Mitigating factors[.] In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider mitigating factors, including the following: . . . .
>
> (9) The victim consented to the criminal conduct that resulted in the victim's death.

This statutory language is virtually identical to the language of § 3592(a)(7). The Johnson jury was permitted to consider as a § 848(m)(9) mitigating factor that two of the five murder victims "consented to the conduct, methamphetamine manufacturing and distribution, that significantly contributed to the circumstances of their deaths[.]" Johnson, 403 F.Supp.2d at 755 n.12. However, the district court rejected the defendant's argument that the prosecutor improperly argued to the jury that § 848(m)(9) did not apply:

---

[1] Congress repealed § 848(m)(9) effective March 9, 2006.

> . . . . While Johnson is correct that 21 U.S.C. § 848(m)(9) authorizes consideration as a mitigating factor whether "[t]he victim consented to the criminal conduct that resulted in the victim's death," and that she asserted this mitigating factor, that does not mean that the prosecutor improperly asserted that the mitigator did not apply. As the government points out, there is or may be a logical and factual distinction between consenting to participate in drug trafficking conduct and consenting to the conduct that results in a person's death. See United States v. Beckford, 962 F.Supp. 840, 820-21 (E.D. Va. 1997) (construing this mitigating factor, under § 848(m)(9), to be limited to criminal conduct that *caused* the victim's death, as opposed to an entire course of conduct out of which the fatal event arose). Thus, the court cannot find that the prosecutor's argument concerning this mitigating factor was improper, because it simply pointed out this logical and factual distinction in this case.

Johnson, 403 F.Supp.2d at 870-71 (emphasis in original). A panel of the Eighth Circuit affirmed, reasoning that "as long as the jurors are not told to ignore or disregard mitigators, a prosecutor may argue, based on the circumstances of the case, that they are entitled to little or no weight." Johnson, 495 F.3d at 978. Stitt and Flores each involved CCE capital murder convictions, and the respective juries were permitted to consider as a § 848(m)(9) mitigating factor whether the victims had consented to the criminal conduct of drug trafficking that resulted in their deaths. Stitt, 250 F.3d at 881-82, 899-99, 906; Flores, 63 F.3d at 1351-52, 1367.

As defendant Herman Johnson concedes, neither Johnson, Stitt, nor Flores directly addressed the issue of whether the statutory language shared by § 848(m)(9) and § 3592(a)(7) – "[t]he victim consented to the criminal conduct that resulted in the victim's death" – is limited to the criminal conduct that caused the death, or includes the entire course of criminal conduct that resulted in the death. See Johnson, 403 F.Supp.2d at 871 (citing Beckford, 962 F.Supp. at 820-21). In Stitt and Flores, the prosecution did not oppose the discovery or introduction of evidence of the victims' drug-related criminal conduct as a mitigating factor under § 848(m)(9). In Johnson, the government chose to challenge the weight of the victims' drug-related conduct at the sentencing phase, after the

evidence had been disclosed to the defendant and admitted to the jury. Here, analogous to the situation in Beckford, the Government is challenging at the outset the scope of § 3592(a)(7) by opposing Johnson's pre-trial motion for disclosure of all evidence of Murad's criminal conduct. Compare Beckford, 962 F.Supp. at 808 (challenging disclosure of victim's criminal conduct under § 848(m)(9) as irrelevant and "not otherwise 'favorable' to the defense or 'material' to sentencing under Brady and its progeny").

In adjudicating the pre-trial motion for discovery, the district court in Beckford construed as two separate phrases: (1) "the victim consented to"; and (2) "the criminal conduct that resulted in the victim's death." Beckford, 962 F.Supp. at 817. Noting that Congress omitted any reference to the victim's "participation" in the criminal conduct, in contrast to language included in the "victim consent" mitigating factor provision of the Model Penal Code, M.P.C. § 210.6(4)(c) (ALI 1962), the Beckford court first concluded that merely "engaging in" illegal conduct with the defendant is insufficient to satisfy the first phrase of § 848(m)(9); "it is necessary that the victim *"consent"* to the defendant's criminal activity." Id. at 820 (emphasis in original).

> Of course, because it generally will be highly unlikely that a homicide victim *actually consented* to being killed, the relevant inquiry with respect to Section 848(m)(9) ordinarily will be whether the victim *impliedly consented* to the criminal conduct which resulted in his death.

Id. at 817 (emphasis in original). Turning to the second phrase, the Beckford court borrowed from state law interpretations of "victim consent" mitigating factor statutes in concluding that the criminal conduct referred to in § 848(m)(9) must have caused the victim's death, quoting from Wuornos v. State, 676 So.2d 971, 975 (Fla.), cert denied, 519 U.S. 997 (1996):

> What the language plainly means is that the victim has knowingly and voluntarily *participated with the killer in some transaction that in and of itself would be likely to result in the victim's death, viewed from the perspective of a reasonable person.* An example would be two persons participating in a

> duel, with one being killed as a result. The statute does not encompass situations in which the killer surprises the victim with deadly force . . .

Id. at 821 (emphasis supplied in Beckford). Applying its interpretation of the two phrases, the district court reasoned that, although a participant in drug trafficking "assumes the risk" of being subjected to deadly violence, such "is not consent to the criminal conduct that resulted in his death." Id. at 822. Accordingly, the Beckford court denied, in part, the defendants' motion for pre-trial disclosure on finding that the defendants lacked a "substantial basis for claiming" that three of the five murder victims impliedly consented to the defendants' criminal conduct of ambushing the victims at a home where drugs were found in retaliation for refusing to sell drugs for the defendants' rival drug organization. Id. at 811, 823 (quoting United States v. Agurs, 427 U.S. 97, 106 (1976) as requiring that a defendant "establish a 'substantial basis for claiming' that a mitigating factor will apply at the penalty phase, in order to invoke the Government's obligation under Brady and its progeny to produce any evidence which is material to that mitigating factor"). "At most, the victims of the . . . murders consented to their participation in the drug trade, which is not sufficient to establish the applicability of Section 848(m)(9)." Beckford, 962 F.Supp. at 823. In contrast, the district court granted, in part, the defendants' motion for pre-trial discovery on finding that the defendants did establish a substantial basis for seeking § 848(m)(9) discovery regarding two other murder victims who were shot and killed in a separate incident following a mutual confrontation that could be viewed as a "consensual dual." Id. at 823.

The authority proffered by defendant Johnson does not displace the persuasive reasoning of the district court in Beckford. Johnson's position "is tantamount to the societal sanctioning of the death of every person who is engaged in the drug trade at the hands of those in that trade who are willing to resort to violence to forestall incursions into their

market areas, to collect their accounts receivable, to redress grievances in their commerce or to effect retribution for real or unargued slights." Beckford, 962 F.Supp. at 823. This court, as recognized in Beckford, is required to construe the language of 18 U.S.C. § 3592(a)(7) to avoid such an absurd result. Id. at 823. The instant charges against Johnson of conspiracy to commit murder to prevent Murad from providing information of a federal crime to federal law enforcement officers, 18 U.S.C. §§ 1512(a)(1)(C), 1512(k); 8 U.S.C. § 3592(c)(1-16), and aiding and abetting in Murad's murder to prevent him from providing information about a federal crime to federal law enforcement officers, 18 U.S.C. § 1512(a)(1)(C), 18 U.S.C. § 2(a), are premised on Johnson's alleged involvement in a contract murder ordered by a Detroit drug dealer. Murad was allegedly ambushed at his car dealership "The Metro Car Company" on March 17, 2005, and shot in the head at close range, due to an unnamed "contractor's" belief that Murad may have cooperated with federal authorities investigating a Detroit drug operation after Murad himself was investigated for laundering drug proceeds by selling high-end automobiles to drug traffickers. Johnson has failed to establish a substantial basis for claiming that Murad actually or impliedly consented to being ambushed for cooperating with federal law enforcement officers, or that Murad participated with his killer in a way that would reasonably be likely to cause his death i.e. a mutual confrontation. Beckford, 962 F.Supp. at 817, 820, 823. The situation is similar to that in Beckford where the murder victims were ambushed in retaliation for offending a rival drug dealer. Id. at 811, 823. Johnson's argument that Murad increased his risk of being murdered by participating in drug trafficking – an assumption of risk argument – is not well taken. Id. at 820, 822. Absent more, Johnson's bare assertion that his discovery request falls within the catch-all mitigating factor found at 18 U.S.C. § 3592(a)(b) is not persuasive.

In closing, the court clarifies that it is only deciding whether Johnson is entitled to

pre-trial disclosure of the items described in Item No. 26, and not whether certain evidence will be admitted at sentencing or which mitigating factors will be submitted to the jury at the penalty phase. See Beckford, 962 F.Supp. at 811. The court also notes that the Government maintains it has previously provided Johnson with discovery concerning the fact that Murad was under investigation by federal law enforcement officers, including affidavits supporting federal search warrants for Murad's car dealership and residence. At some point during this litigation, should defendant advance a substantial basis to conclude this factor may apply at sentencing, the court may be called upon to revisit this issue.

Consistent with the persuasive reasoning in Beckford, supra, and for the reasons set forth above, defendant Herman Johnson's motion for disclosure of the materials set forth in Item No. 26 is hereby DENIED without prejudice.

Dated: May 16, 2008

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 16, 2008 by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk