UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                          Case No. 05-CR-80337

vs.                                      HON. GEORGE CARAM STEEH

HERMAN NORMAN JOHNSON,
a/k/a HERMAN DAVIS,

        Defendant.

_____/

<u>ORDER DENYING DEFENDANT'S MOTION TO DISMISS
THE CAPITAL ASPECTS OF THE INDICTMENT (#102)</u>

Defendant Herman Norman Johnson moves to dismiss the capital aspects of a November 1, 2005 First Superceding Indictment. The facts and legal arguments presented in the parties' briefs are sufficient to adjudicate the motion. Oral argument would not significantly aid the decisional process. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motion be resolved without oral argument.

I.

Johnson is charged in a three-count November 1, 2005 First Superceding Indictment with: conspiracy to commit murder to prevent a person from providing information concerning a federal crime to a law enforcement officer of the United States, 18 U.S.C. §§ 1512(a)(1)(C), 1512(k), involving aggravating circumstances as enumerated in 18 U.S.C. § 3592(c)(1) through (c)(16); murder to prevent a person from providing information concerning a federal crime to a law enforcement officer of the United States, aiding and abetting, 18 U.S.C. § 1512(a)(1)(C), 18 U.S.C. § 2(a); and felon in possession of a firearm,

18 U.S.C. § 922(g).  The charges arise from Johnson's alleged involvement in the contract murder of one Waad Murad.  Murad was under criminal investigation for laundering drug proceeds by selling luxury motor vehicles to drug dealers from his Detroit business, "The Metro Car Company."  An unnamed "contractor" allegedly contacted Johnson in March 2005 for assistance in killing Murad because the contractor believed Murad was cooperating with the investigation.  The contractor allegedly promised to pay Johnson for his involvement.  On March 17, 2005, Johnson and others allegedly traveled to The Metro Car Company looking for Murad, with Johnson walking onto the premises and confirming Murad's presence.  As Murad sat in a motor vehicle with another individual, he was fatally shot in the head with a .357 caliber handgun by someone other than Johnson.  The murder weapon was allegedly found at Johnson's home on March 29, 2005 during a warrant based search.

Pursuant to 18 U.S.C. § 3593 of the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591 et seq., the Government filed a "Notice of Intent To Seek The Death Penalty" on May 23, 2007, notifying Johnson and the court that the Government will seek the death penalty if Johnson is convicted for the murder or conspiracy to murder Murad.  The Government provides notice that it will seek to prove two aggravating factors under 18 U.S.C. § 3591(a)(2): that Johnson intentionally killed Murad; and that Johnson intentionally participated in an act, contemplating that Murad's life would be taken, and that Murad died as a direct result of that act.  The Government also provides notice that it will seek to prove four aggravating factors under 18 U.S.C. § 3592(c): that Johnson has previously been convicted of a state offense punishable by a term of imprisonment of more than 1 year involving the use, attempted use, or threatened use of a firearm, to wit, that Johnson was convicted of armed robbery, M.C.L. § 750.529, in Detroit Recorders Court in November

1985, 18 U.S.C. § 3592(c)(2); that Johnson knowingly created a grave risk of danger to one or more persons in addition to the victim, to wit, that Johnson knowingly created a grave risk of danger to the individual seated next to Murad when Murad was shot, 18 U.S.C. § 3592(c)(5); that Johnson committed the charged murder offenses in expectation of receiving anything of pecuniary value, 18 U.S.C. § 3592(c)(8); and that Johnson committed the charged murder offenses after substantial planning and premeditation to cause the death of Murad, 18 U.S.C. § 3592(c)(9).  The Government provides further notice that it will seek to prove three other aggravating circumstances under 18 U.S.C. §§ 3593(a)(2) and (e): that Johnson killed Murad in an effort to obstruct justice by preventing Murad's cooperation with law enforcement; that Johnson's conduct left behind Murad's widow and three minor children, resulting in a devastating emotional and financial impact on Murad's family; and that Johnson has shown no remorse for the homicide.

In moving to dismiss the capital aspects of the First Superceding Indictment, Johnson makes seven legal arguments: (1) the FDPA operates in an arbitrary and capricious manner because the federal death penalty is rarely sought in comparison to the large number of violent crimes committed each year; (2) the FDPA operates in an arbitrary and capricious manner because there is no principled basis for distinguishing between cases in which the death penalty is imposed and cases in which it is not; (3) the federal death penalty is applied on the invidious basis of race or the irrational basis of geography; (4) Ring v. Arizona, 536 U.S. 584 (2002) rendered the FDPA unconstitutional because the requisite aggravating circumstances for seeking the death penalty are not required to be presented to the grand jury or charged in the indictment; (5) certain aggravating circumstances relied upon by the Government should be struck as vague, duplicitous, lacking in factual support, or otherwise irrelevant; (6) the FDPA is unconstitutional in light

3

of overwhelming evidence that its enforcement leads to the execution of innocent people; and (7) the death penalty constitutes cruel and unusual punishment and a per se denial of due process.

II.

Johnson argues that the FDPA violates the Eighth Amendment as arbitrary and capricious based on proffered evidence that the federal death penalty is rarely applied in comparison to the large number of potential federal capital crimes committed each year. Johnson relies on reasoning in Furman v. Georgia, 408 U.S. 238 (1972), which held that imposing the death penalty under Georgia law against a convicted rapist and a convicted murderer, and imposing the death penalty under Texas law against a convicted rapist, would violate the Eighth Amendment.  Johnson's argument may be summarized as:

> When a country of over 200 million people inflicts an unusually severe punishment no more than 50 times a year, the inference is strong that the punishment is not being regularly and fairly applied.  To dispel it would indeed require a clear showing of nonarbitrary infliction.

> Although there are no exact figures available, we know that thousands of murders and rapes are committed annually in States where death is an authorized punishment for those crimes.  However the rate of infliction is characterized - as 'freakishly' or 'spectacularly' rare, or simply as rare - it would take the purist sophistry to deny that death is inflicted in only a minute fraction of these cases.  How much rarer, after all, could the infliction of death be?

> When the punishment of death is inflicted in a trivial number of cases in which it is legally available, the conclusion is virtually inescapable that it is being inflicted arbitrarily.  . . . .

Id at 293 (Brennan, J., concurring).  Johnson relies on a specific quote from Justice Stewart's concurring opinion:

> These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual.  For, of all the people convicted of rapes and murders, . . . many just as reprehensible as these, the petitioners are among a capriciously selected handful upon whom the sentence of death

4

> has in fact been imposed. My concurring Brothers have demonstrated that, if any basis can be discerned for the selection of these few to be sentenced to die, it is the constitutionally impermissible basis of race. But racial discrimination has not been proved, and I put it to one side. I simply conclude that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and freakishly imposed.

Id at 309-10 (Stewart, J., concurring) (footnotes and internal citations omitted). Johnson proffers evidence that, as of January 2008, of 2359 "potentially" death-eligible federal defendants, only 52 were sentenced to death. See Defendant's Brief, at 30.

Johnson's argument is without merit. Furman dealt with state capital sentencing laws that "left to the uncontrolled discretion of judges or juries the determination of whether defendants committing these crimes should die or be imprisoned. Under these [state] laws no standards govern the selection of the penalty." Furman, 408 U.S. at 253 (Douglas, J., concurring). The same cannot be said of the FDPA. As outlined in United States v. Nguyen, 928 F.Supp. 1525 (D. Kan. 1996), several specific findings must be made by a jury before the death penalty may be imposed under the FDPA: (1) the jury must unanimously find beyond a reasonable doubt that the defendant had the requisite intent to commit the death-eligible offense, 18 U.S.C. § 3591(a): (2) the jury must unanimously find beyond a reasonable doubt that at least one of the statutory aggravating factors for which notice was provided exists, 18 U.S.C. § 3591(c)(1-15), and; (3) the jury must weigh the proven statutory aggravating factor or factors and any other non-statutory aggravating factor or factors for which notice was provided against any mitigating factors, and conclude that the death penalty is appropriate, 18 U.S.C. § 3591(d-e). See Nguyen, 928 F.Supp. at 1532. Aggravating factors must be proven to a jury beyond a reasonable doubt, while mitigating factors need be proven only by a preponderance of the evidence. Id (citing 18 U.S.C. § 3591(c-d)). Any juror finding the existence of a mitigating factor may consider it

in making a sentencing decision in that unanimity is not required.  Id.  The FDPA does not leave the decision to impose the death penalty to the uncontrolled discretion of the jury.

Johnson's reliance on evidence that only 52 of 2359 "potentially" death-eligible federal defendants were sentenced to death as of January 2008 is misplaced as Furman was concerned with the relative rarity of the death penalty imposed upon those *convicted* of state capital crimes.  Furman did not concern itself with the charging decision made by the prosecution.  Johnson's proffered evidence indicates that, among 435 actual federal death penalty defendants, 120 received life sentences and 61 received death sentences; the court cannot determine the fate of the remaining 254 defendants from the evidence. See Defendant's Brief, at 30.  Johnson's proffered evidence does not raise an inference, let alone a strong inference, that the punishment of death is being arbitrarily or capriciously applied under the FDPA.

III.

Johnson argues that the FDPA violates the Eighth Amendment because there is no principled basis for distinguishing between cases in which the death penalty is imposed and cases in which it is not.  Johnson asserts that the jury's unlimited discretion to withhold a death sentence in the mitigation phase renders death penalty verdicts arbitrary and capricious.  Johnson proffers summaries of federal death penalty cases to support his position that there is little consistency or predictability in the manner in which juries have imposed the federal death penalty, nor is there consistency in those cases where the defendant is permitted to plead guilty to a life term or less as compared to those that proceed through trial.

"[T]he Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character

6

or record and any of the circumstances of the offense that the defendant proffers as a basis

for a sentence less than death." Eddings v. Oklahoma, 455 U.S. 104, 110 (1982) (quoting

Lockett v. Ohio, 438 U.S. 586, 604 (1978) (Burger, J., plurality) (emphasis in original)).

Justice Scalia, concurring with Justice Blackmun's dissenting opinion in Callins v. Collins,

510 U.S. 1141 (1994), sees as constitutionally incompatible the requirement of Furman that

a "sentencer's discretion to impose death . . . be closely confined," and the requirement of

Eddings and Lockett that "the sentencer's discretion *not* to impose death (to extend mercy)

. . . be unlimited." Callins, 510 U.S. at 1141-42 (Scalia, J., concurring in dissent) (emphasis

in original).   This inconsistency is viewed as arising from the sentencer's unlimited

discretion in the mitigation phase of sentencing to withhold a death sentence.

> Over time, I have come to the conclusion that even this [two-stage]
> approach is unacceptable: It simply reduces, rather than eliminates, the
> number of people subject to arbitrary sentencing.   It is the decision to
> sentence a defendant to death - not merely the decision to make a defendant
> eligible for death - that may not be arbitrary.   While one might hope that
> providing the sentencer with as much relevant mitigating evidence as
> possible will lead to more rational and consistent sentences, experience has
> taught otherwise.   It seems that the decision whether a human being should
> live or die is so inherently subjective - rife with all of life's understandings,
> experiences, prejudices, and passions - that it inevitably defies the rationality
> and consistency required by the Constitution.

Callins, 510 U.S. at 1152-53 (Blackmun, J., dissenting) (footnote omitted).

Absent more persuasive Supreme Court or Circuit Court authority, this court is not

convinced that Eddings and Lockett must be overruled as being inconsistent with Furman.

The Supreme Court issued Eddings in 1982 and Lockett in 1978, well after the 1972

decision in Furman.   Indeed, the Supreme Court has recognized since Furman that the

existence of discretionary opportunities in a capital case does not of itself render a capital

sentence arbitrary or capricious:

> The existence of . . . discretionary stages [in capital cases] is not

7

> determinative of the issue [of whether a capital punishment system operates in an arbitrary or capricious manner].  At each of [the] stages [in a capital proceeding] an actor in the criminal justice system makes a decision which may remove a defendant from consideration as a candidate for the death penalty.  <u>Furman</u>, in contrast, dealt with the decision to impose the death sentence on a specific individual who had been convicted of a capital offense.  Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates our Constitution.  <u>Furman</u> held only that, in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the decision to impose it had to be guided by standards so that the sentencing authority would focus on particularized circumstances of the crime and the defendant.

<u>McCleskey v. Kemp</u>, 481 U.S. 279, 307 (1987) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 199 (1976) (footnote omitted)).  The decision of a federal jury to afford a capital defendant mercy in the mitigation phase of sentencing of the FDPA, after considering the individualized aspects of the defendant's character and record and the circumstances of his or her particular offense, does not offend the Eighth Amendment under existing precedent.  <u>Id</u>; <u>Eddings</u>, 455 U.S. at 110; <u>Lockett</u>, 438 U.S. at 604.

Johnson's proffered case summaries do not support an inference that federal juries are arbitrarily and capriciously granting mercy to capital defendants.  The reasons why 61 federal death verdicts and 120 life verdicts have been imposed since January 2008 are well beyond the scope of the proffered case summaries.  In short, the evidence does not meet Johnson's burden of demonstrating that the FDPA operates in an arbitrary and capricious manner during the charging, pleading, or sentencing phases.  The numerous variances among the cases preclude this court from finding that the 61 death penalties were imposed without legitimate reason.  <u>See</u> <u>United States v. Sampson</u>, 275 F.Supp.2d 49, 88 (D. Mass. 2003) (quoting <u>McCleskey</u>, 481 U.S. at 307 n.28 for the proposition that "[t]he Constitution is not offended by inconsistency in results based on the objective circumstances of the crime.  Numerous legitimate factors may influence the outcome of a trial and a defendant's

ultimate sentence . . . ."). Johnson has not shown that there is no principled basis for distinguishing between cases where the death penalty is imposed under the FDPA, and those in which it is not.

IV.

Johnson, an African-American, argues that the FDPA violates the Fifth and Eighth Amendments because it is applied on the invidious basis of race and the irrational basis of geography. Johnson relies on statistics from a September 12, 2000 Department of Justice study, as supplemented by a June 6, 2001 supplemental report (collectively "DOJ Study"). John also relies on an analysis of the DOJ Study performed by Professor David Baldus, and a study of the Colorado death penalty. Johnson proffers tables indicating that the number of federal death verdicts in "Southern Jurisdictions,"[1] a comparison chart derived from the DOJ Study,[2] and the number of federal death penalty authorizations by state. Johnson argues that, absent a neutral explanation by the Government for the racial and geographic disparities reflected in these statistics, he is entitled to a hearing on the issue pursuant to Batson v. Kentucky, 476 U.S. 79, 93-94 (1986). Johnson argues that a hearing is particularly appropriate here because no other alleged co-conspirator or participant faces the prospect of the death penalty. Johnson also advances non-constitutional arguments in support of a right to be free from racial and geographic discrimination.

---

[1] Johnson includes as "Southern Jurisdictions" Texas, Missouri, Virginia, Georgia, Oklahoma, Arkansas, Louisiana, Maryland, North Carolina, South Carolina, Illinois, Iowa, California, and West Virginia. See Defendant's Brief, at 52.

[2] Johnson compares the federal Districts of Massachusetts, Southern New York, Eastern Virginia, Missouri, and Texas in the categories of the number of "Cases Submitted 1988-2000," "Death Penalty Requested," "Death Penalty Approved," "Race of the Defendants Approved," and "Race of Defendants Declined".

Batson, relied upon by Johnson, held under the Fourteenth Amendment that a criminal defendant may make out a prima facie showing of unlawful race discrimination in a state prosecutor's selection of petit jurors by relying on the totality of the circumstances in the defendant's own case, and once made, the prosecutor bears the burden of articulating a neutral explanation for exercising peremptory challenges to remove all black persons from the venire.  Batson, 476 U.S. at 97-98, 100.  More to the point, in United States v. Armstrong, 517 U.S. 456 (1996), the Supreme Court held that a federal defendant asserting a Fifth Amendment selective-prosecution claim "must present 'clear evidence . . .'" to support the claim.  Id at 465 (quoting United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926)).  The defendant must demonstrate by clear evidence "that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'"  Id (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)).  "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."  Armstrong, 517 U.S. at 465.  Armstrong distinguished the lesser level of proof required in Batson petit juror challenges by recognizing that the entire venire is before the trial judge, making the judge "well situated to detect whether a challenge to the seating of one juror is part of a 'pattern' of singling out members of a single race for peremptory challenges."  Id at 468.

With respect to an Eighth Amendment claim, absent a showing that the capital punishment system operates in an arbitrary and capricious manner, a defendant "cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did *not* receive the death penalty."  McCleskey, 481 U.S. at 306-307 (emphasis in original).  "Where the discretion that is fundamental to our criminal process is involved, we decline to assume that what is unexplained is invidious."  Id at 313.  Thus,

studies that "indicate a discrepancy that appears to correlate with race" fails to demonstrate "a constitutionally significant risk of racial bias affecting the . . . capital sentencing process." Id.

Johnson's proffered statistics and tables do not constitute clear evidence, as required for Fifth Amendment purposes, that the Attorney General or United States Attorney for the Eastern District of Michigan were motivated by racial bias in charging Johnson under the FDPA, or that similarly situated individuals of a different race were not prosecuted under the FDPA.  Armstrong, 517 U.S. at 465.  This finding is consistent with the Supreme Court's decision in United States v. Bass, 536 U.S. 862 (2002).  In Bass, the federal defendant moved to dismiss the notice of intent to seek the death penalty on the grounds that the Government was seeking the death penalty because he was black, and in the alternative, sought discovery as to the Government's charging practices.  The district court granted the motion for discovery, and dismissed the death penalty notice after the Government refused to obey the discovery order.  A panel of the Sixth Circuit affirmed the district court, finding that the DOJ Study, Department statements, and other statistical evidence met the Armstrong requirements of demonstrating both a discriminatory effect and a discriminatory purpose.  United States v. Bass, 266 F.3d 532, 536, 539-540 (6th Cir. 2001), rev'd, 536 U.S. 862.  The Supreme Court reversed, reasoning that:

> . . . .  Even assuming that the Armstrong requirement can be satisfied by a nationwide showing (as opposed to a showing regarding the record of the decision-makers in respondent's case), raw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants.*

Bass, 536 U.S. at 864 (emphasis in original).  The per curium opinion closed by stating that "[t]he Sixth Circuit's decision is contrary to Armstrong and threatens the 'performance of a core executive constitutional function."  Id (quoting Armstrong, 517 U.S. at 465).

11

Pursuant to Armstrong and Bass, Johnson's motion to dismiss or for an evidentiary hearing based on the proffered evidence is not well taken.  Johnson's assertion that no other alleged co-conspirator or participant faces the prospect of the death penalty does not aid his position in the absence of evidence that other similarly situated co-conspirators or participants are white.  Johnson has not advanced persuasive authority for the proposition that a claim of geographic discrimination enjoys broader protection under the Fifth Amendment than does his claim of racial discrimination.

Johnson has likewise failed to establish an Eight Amendment claim premised on racial or geographical disparities.  This court found in Sections II and III, supra, that the FDPA does not operate in an arbitrary and capricious manner.  Accordingly, as in McCleskey, the statistics and a report authored by Professor Baldus[3] fail to demonstrate "a constitutionally significant risk of racial bias affecting the . . . capital sentencing process." McCleskey, 481 U.S. at 306-307.  Johnson's arguments attempting to distinguish McCleskey are not well taken.

Apart from constitutional grounds, Johnson states claims premised on the FDPA's required jury instruction and juror certificate with respect to unlawful race discrimination, 18 U.S.C. §§ 3593, 3593(f), Congressional debate regarding the federal death penalty, and the court's supervisory powers to cure impermissible racial or geographical bias.  Johnson fails to cite authority for his proposition that the FDPA jury instructions and certificate create an independent right to challenge the Government's charging decision.  Congressional debate absent Congressional action in the form of a codified right to the relief sought by Johnson is likewise unpersuasive.  While the court acknowledges its supervisory powers,

---

[3]  Professor Baldus co-authored a study purporting to show a disparity in the imposition of the death sentence under Georgia law based on the race of the murder victim and the race of the defendant.  See McCleskey, 481 U.S. at 286.

Johnson has not set forth clear evidence that impermissible racial or geographical bias played a role in charging him under the FDPA.

V.

Johnson argues that the Supreme Court's holding in Ring, supra, rendered the FDPA unconstitutional because the aggravating circumstances that must be proven in seeking the death penalty are not required by the FDPA to be presented to the grand jury or charged in the indictment.  Ring held that an Arizona sentencing statute authorizing the trial judge alone to determine the presence or absence of the aggravating factors necessary for the imposition of the death penalty violated the Sixth Amendment right to a jury trial because the statute's aggravating factors operated as "the functional equivalent of the elements of a greater offense[.]"  Ring, 536 U.S. at 588, 609 (quoting Apprendi v. New Jersey, 530 U.S. 466, 494 n.19 (2000), and overruling Walton v. Arizona, 497 U.S. 639 (1990)).  Citing Ring in upholding a double jeopardy challenge to a capital conviction under Pennsylvania law, the Court observed in Sattazahn v. Pennsylvania, 537 U.S. 101, 111 (2003) that "[F]or purposes of the Sixth Amendment's jury-trial guarantee, the underlying offense of 'murder' is a distinct, lesser included offense of 'murder plus aggravating circumstances'; Whereas the former exposes a defendant to a maximum penalty of life imprisonment, the latter increases the maximum permissible sentence to death."  For purposes of the Fifth Amendment, "an indictment is sufficient if it . . . contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend[.]"  Hamling v. United States, 418 U.S. 87, 118 (1974).  See also Jones v. United States, 526 U.S. 227, 232, 252 (1999) (interpreting federal carjacking statute, 18 U.S.C. § 2119, providing for a base 15-year maximum sentence upon conviction, a 25-year maximum sentence "if serious bodily injury results," and a maximum

13

life sentence "if death results," "as establishing three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict."). Johnson argues that 18 U.S.C. § 3593(a) of the FDPA only requires the Government to file and serve the defendant with pre-trial notice of the aggravating factors the Government believes are applicable, thereby violating the Fifth Amendment indictment requirement by treating the FDPA aggravating factors as sentencing factors instead of elements of the federal crime of capital murder. Johnson relies on United States v. Jackson, 390 U.S. 570 (1968), for the proposition that this court is precluded from re-writing the FDPA and requiring the aggravating factors to be presented to the grand jury and set forth in the indictment.

Johnson's challenge is a facial challenge to the FDPA. It is undisputable that the six aggravating factors relied upon by the Government in prosecuting Johnson under the FDPA are set forth in the November 1, 2005 First Superceding Indictment, and were presented to the grand jury. See November 1, 2005 First Superceding Indictment, at 3-6. As succinctly stated by a panel of the First Circuit Court of Appeals:

> We agree with this line of cases: there is no irredeemable conflict between the FDPA and Ring. The FDPA does not . . . grant to the prosecutors exclusive authority for determining the likely existence of aggravating factors. No provision of the FDPA prohibits a grand jury from considering those factors necessary for imposition of a death sentence. The statute simply is silent with respect to the grand jury. It thus is not rendered facially unconstitutional by Ring.

United States v. Sampson, 486 F.3d 13, 21 (1st Cir. 2007) (citing United States v. Brown, 441 F.3d 1330, 1367 (11th Cir. 2006), cert. denied, 549 U.S. 1182 (2007); United States v. Allen, 406 F.3d 940, 949 (8th Cir. 2005), cert. denied, 549 U.S. 1095 (2006); United States v. Barnette, 390 F.3d 775, 788-790 (4th Cir. 2004), vacated on other grounds, 546 U.S. 803 (2005); United States v. Robinson, 367 F.3d 278, 290 (5th Cir. 2004), and; cf.

United States v. Collazo-Aponte, 281 F.3d 320, 324-325 (1st Cir. 2002)).  Because the FDPA does not prohibit the Government from presenting the aggravating factors to the grand jury and setting forth those factors in the indictment, as was done here, the FDPA is not facially unconstitutional.  Id.

Unlike the Federal Kidnaping Act at issue in Jackson, this court need not "create from whole cloth a complex and completely novel procedure and . . . thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality." Jackson, 390 U.S. at 580.  The Federal Kidnaping Act under review in Jackson expressly provided that a person found guilty under the statute was subject to the death penalty "if the kidnaped person [had] not been liberated unharmed, and if the verdict of the jury shall so recommend[.]"  Id at 570-571 (quoting 18 U.S.C. § 1201(a)(1)).  The statute lacked any procedure for imposing the death penalty upon a defendant who waived his right to a jury trial or pleaded guilty.  Id at 571.  The Jackson Court rejected the Government's argument that the statute empowered the trial judge to convene a "special jury" following a bench trial or guilty plea for the purpose of deciding whether to impose the death penalty, finding that the statute itself mandated that the petit jury provide the death penalty recommendation, and that the statute did not provide for the bifurcated "special jury" procedure advocated by the Government.  Id at 574, 577-78.  The Court declined to correct Congress's inadvertence in drafting the statute.  Id at 579.  The FDPA, at issue here, simply does not preclude the Government from presenting the aggravating factors to the grand jury and charging the aggravating factors in the indictment.  Sampson, 486 F.3d at 21.  Accordingly, the FDPA does not, on its face, violate the Fifth Amendment.

Further, Ring was decided solely pursuant to the Sixth Amendment right to a trial by jury as to the existence of aggravating factors which "operate as 'the functional equivalent

15

of an element of a greater offense.'" Ring, 536 U.S. at 609 (quoting Apprendi, 530 U.S. at 494 n.19). Sattazahn was decided consistent with Ring and the Sixth Amendment right to a jury trial. Sattazahn, 537 U.S. at 111. Apprendi was decided under the Due Process Clause of the Fourteenth Amendment and the Sixth Amendment which, viewed together, "entitle a criminal defendant to 'a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" Apprendi, 530 U.S. at 476-77. Neither Ring, Sattazahn, nor Apprendi support Johnson's proposition that aggravating factors are the "functional equivalents" of elements for Fifth Amendment purposes and the grand jury procedure of indictment. See United States v. Lentz, 225 F.Supp.2d 672, 679-680 (E.D. Va. 2002) (holding that "the narrow holding of Ring did not mandate that aggravating factors must become elements of a new greater substantive offense"); United States v. Johnson, 239 F.Supp.2d 924, 939 (N.D. Iowa 2003) (finding that "[u]nder Ring and Apprendi 'aggravating factors' are *not* 'elements' in the specific sense that they increase the maximum penalty for the offense, with the constitutional consequence that such factors may be found by a jury beyond a reasonable doubt.") (emphasis in original).

In Jones, the Court resolved its doubt whether the Government's reading of the federal carjacking statute (that the statute defined one crime with a choice of three maximum penalties) would survive the Due Process Clause of the Fifth Amendment and notice and jury trial guarantees of the Sixth Amendment by holding that the statute defined three distinct defenses: carjacking subject to a maximum of 15 years imprisonment; carjacking resulting in "serious bodily injury" subject to a maximum of 25 years imprisonment; and carjacking resulting "in death" subject to a maximum life term. Jones, 526 U.S. at 229, 240, 243 n.6. The Fifth and Sixth Amendment principle which concerned the Court was that "any fact (other than prior conviction) that increases the maximum

16

penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Id at 243 n.6. The Court explained that "[t]he constitutional safeguards that figure in our analysis concern not the identity of the elements defining the criminal liability but only the required procedures for finding the facts that determine the maximum permissible punishment; these are the safeguards going to the formality of notice, the identity of the factfinder, and the burden of proof." Id. Jones did not hold that "serious bodily injury" and "death" were additional substantive elements of the crimes of carjacking as set forth in 18 U.S.C. § 2119. Consistent with Sampson, supra, and to the extent the FDPA's aggravating factors as set forth in § 3592 are viewed as additional facts that increase the crimes set forth in § 3591 to capital crimes, this court, as in Jones, resolves any constitutional doubt under the Fifth Amendment by interpreting the FDPA as permitting the procedure of presenting the grand jury with the aggravating factors and alleging the aggravating factors in the indictment. Jones, 526 U.S. at 239; Sampson, 486 F.3d at 21. That procedure was applied here. Johnson's argument that Ring rendered the FDPA unconstitutional under the Fifth Amendment is without merit.

VI.

Johnson argues that certain aggravating circumstances relied upon by the Government should be struck as vague, duplicitous, lacking in factual support, or as otherwise irrelevant. "An aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both)." Tuilaepa v. California, 512 U.S. 967, 972 (1994). An aggravating factor may not be overbroad and "apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder." Id. An aggravating factor also must not be vague by creating "an unacceptable risk of randomness, the mark of [an] arbitrary and capricious process[.]" Id at 974-75 (citing

17

Furman, 408 U.S. 238).  An aggravating factor is not unconstitutionally vague "if it has some 'common-sense core of meaning . . . that criminal juries should be capable of understanding.'"  Id at 973 (quoting Jurek v. Texas, 428 U.S. 262, 269 (1976) (White, J., concurring)).  An aggravating factor "must enable the sentencer to distinguish those who deserve capital punishment from those who do not, [and] . . . must provide a principled basis for doing so."  Arave v. Creech, 507 U.S. 463, 474 (1993).  Due to the finality of a death sentence as opposed to a prison sentence, "there is a corresponding [greater] need for reliability" in assessing aggravating factors.  Woodson v. North Carolina, 428 U.S. 280, 305 (1976).  Use of duplicative aggravating factors, that is, factors that "substantially overlap," threatens "an unconstitutional skewing of the weighing process[.]"  United States v. McCullah, 76 F.3d 1087, 1112 (10th Cir. 1996) (citing Stringer v. Black, 503 U.S. 222, 232 (1992)).

A.

Johnson argues that alleged aggravating factor 18 U.S.C. § 3592(c)(2), that he was previously convicted of the state offense of armed robbery, M.C.L. § 750.529, involving the use, attempted use, and threatened use of a firearm, lacks factual support considering he was 18 years old at the time of the conviction, the victim was shot by Johnson's co-defendant in an act that was clearly unplanned, and Johnson did not handle a firearm during the robbery.  Johnson moves to strike this factor or for an evidentiary hearing.  The Government proffers that state court records show Johnson jumped into the driver's seat of a carjacked vehicle immediately after his co-defendant shot one of the robbery victims, and that Johnson told a remaining passenger "I'm going to kill you mother-fucker, I'm going to kill you mother-fucker."

The undisputed facts that Johnson was 18 years old at the time of the armed

18

robbery, and that Johnson's co-defendant shot the robbery victim, does not render unreliable a finding that Johnson was "previously convicted of a . . . State offense punishable by a term of imprisonment of more than 1 year *involving* the use or attempted use of a firearm . . . against another person."  18 U.S.C. § 3592(c)(2) (emphasis added). The aggravating factor does not require proof that Johnson was older than 18, or that Johnson himself used the firearm.  Further, "[t]he Government is not required to give notice of the specific evidence it will present in support of aggravating factors."  United States v. Mayhew, 380 F.Supp.2d 936, 947 (S.D. Ohio 2005) (citing inter alia United States v. Battle, 173 F.3d 1343, 1347 (11th Cir. 1999) (permitting the Government to amend the Notice of Intent to include specific evidence in support of aggravating factors on the eve of sentencing proceedings)).  There is no need for an evidentiary hearing.  Johnson's motion to strike aggravating factor § 3592(c)(2) is without merit.

### B.

Johnson argues that alleged aggravating factor 18 U.S.C. § 3592(c)(5), that he knowingly created a grave risk of danger to the individual seated next to Murad when Murad was shot once in the head at close range lacks a factual premise "from the government's own recitation of facts" because Johnson did not shoot Murad, and Johnson had no knowledge that others were in danger.  The Government proffers that Murad was shot while seated in the driver's seat of a vehicle, with its engine running, and that a person seated next to Murad in the passenger seat was at a grave risk of danger.  The Government also proffers that Johnson planned with the shooter to kill Murad, and accompanied him to The Metro Car Company and identified Murad for execution.

The Government's recitation of facts, that Johnson accompanied the shooter to The Metro Car Company knowing Murad was going to be shot with a .357 caliber handgun does

not render unreliable a finding that Johnson "knowingly created a grave risk of death to 1 or more persons" at the business establishment "in addition to" Murad.  The Government has identified that specific person placed at grave risk as the person seated next to Murad in the confined space of a motor vehicle.  18 U.S.C. § 3592(c)(5).  The fact that the shooter fired only one shot does not preclude a finding that there was a grave risk to the person sitting in close proximity to the target.   At this pre-trial stage, the Government is not required to present all of the evidence it will rely on to support the § 3592(c)(5) aggravating factor.  Mayhew, 380 F.Supp.2d at 947; Battle, 173 F.3d at 1347.  Johnson's motion to strike aggravating factor § 3592(c)(5) is without merit.

C.

Johnson argues that alleged aggravating factor 18 U.S.C. § 3592(c)(9), that he committed the charged murder offenses after substantial planning and premeditation, is vague because the term "substantial" is vague.  The court disagrees, as the term has a common-sense core meaning that a jury should be capable of understanding.  Tuilaepa, 512 U.S. at 973.  Johnson's motion to strike aggravating factor § 3592(c)(9) is without merit.

D.

Johnson moves to strike the three aggravating factors alleged under 18 U.S.C. §§ 3593(a)(2) and (e), arguing the FDPA does not authorize non-statutory factors.  Johnson argues the FDPA is ambiguous in that § 3593(a) refers only to the effect of the offense on the victim's family and the aggravating factors set forth in § 3592(c)(1-16), and not the general language found in § 3592(c) which allows that a jury "may consider whether any other aggravating factor for which notice has been given exists."  As Johnson concedes, this argument has been rejected.  See Sampson, 486 F.3d at 44; Nguyen, 928 F.Supp. at

20

1536.  18 U.S.C. § 3592(c) of the FDPA clearly authorizes the jury to consider the aggravating factors set forth in § 3592(c)(1-16) and "any other aggravating factor[.]" Johnson's argument that the FDPA does not authorize the use of aggravating factors other than those set forth in § 3592(c)(1-16) is without merit. Sampson, 486 F.3d at 44; Nguyen, 928 F.Supp. at 1536.

E.

Johnson argues that the alleged non-statutory aggravating factor that he killed Murad in an effort to obstruct justice should be stricken because this factor clearly applies an element of the charged crimes.  The argument is without merit because an aggravating circumstance may be contained in both the definition of the crime and in a separate aggravating factor.  Tuilaepa, 512 U.S. at 972.

F.

Johnson argues that the alleged non-statutory factor that his conduct left behind Murad's widow and three minor children, resulting in a devastating emotional and financial impact on Murad's family, does not distinguish between non-capital murders and capital murders.  Johnson seeks an evidentiary hearing if the court does not strike this aggravating factor.

18 U.S.C. § 3593(a) expressly provides that an aggravating factor may include "the effect on the victim and the victim's family[.]"  Johnson's argument would require this court to conclude that a murder causing a devastating impact upon the victim's wife and minor children is not a principled basis for distinguishing those who may deserve the death penalty from those that do not.  Arave, 507 U.S. at 474.  The court cannot draw such a conclusion from Johnson's assertion that all murders "almost always leave[] behind emotionally distraught and financially vulnerable family members."  The Government is not

21

required to present all of the evidence it will rely on to support this factor.  Mayhew, 380 F.Supp.2d at 947; Battle, 173 F.3d at 1347.  Johnson's motion to strike this factor, or for an evidentiary hearing, is without merit.

G.

Johnson argues that the alleged non-statutory aggravating factor that he has shown no remorse for the homicide is ambiguous in the absence of an expressed justification for the factor.   Johnson seeks an evidentiary hearing if the court does not strike this aggravating factor.

Johnson concedes that lack of remorse may be indicative of a legitimate concern for future dangerousness, but submits that a lack of evidence demonstrating future dangerousness renders this factor ambiguous.  The Government is not required at this pre-trial stage to present all of the evidence it will rely upon to prove lack of remorse.  Mayhew, 380 F.Supp.2d at 947; Battle, 173 F.3d at 1347.  The fact that the Government has not alleged "future dangerousness" as a separate factor does not preclude alleging lack of remorse.   Indeed, it appears to the court that alleging both would be duplicative, and threaten an unconstitutional skewing of the jury's weighing process.  McCullah, 76 F.3d at 1112.  Johnson's motion to strike this factor, or for an evidentiary hearing, is without merit.

VII.

Johnson argues that the FDPA is unconstitutional in light of overwhelming evidence that its enforcement leads to the execution of innocent people.  The argument, advanced by the district court in United States v. Quinones, 205 F.Supp.2d 256 (S.D.N.Y. 2002), was rejected by the Second Circuit Court of Appeals in United States v. Quinones, 313 F.3d 49 (2d. Cir. 2002).  Succinctly stated:

22

> . . . [T]he argument that innocent people may be executed - in small or large
> numbers - is not new; it has been central to the centuries-old debate over
> both the wisdom and the constitutionality of capital punishment, and binding
> precedents of the Supreme Court prevent us from finding capital punishment
> unconstitutional based solely on a statistical or theoretical possibility that a
> defendant might be innocent.

Quinones, 313 F.3d at 63.  The Fifth Amendment expressly contemplates use of the death

penalty.  See U.S. Const. Amend. V (providing that "No person shall be held to answer for

a capital crime . . . unless on a presentment or indictment of a Grand Jury[.]"  Absent

persuasive precedent to the contrary, Johnson's argument that the FDPA is

unconstitutional because its enforcement leads to the execution of innocent people is not

well taken.

## VIII.

Johnson argues that the death penalty constitutes cruel and unusual punishment

and a per se denial of due process.  Johnson asks the court to find, contrary to existing

Supreme Court precedent, that the death penalty itself is unconstitutional in all cases

because the death penalty "is racist to its very core," "has in the past, and inevitably will in

the future, lead to the execution of innocent people," "produce[s] irreconcilable

inconsistencies," and is "wrong and immoral" under "evolving standards of decency."

Consistent with the precedent and analysis herein, this court does not find that the penalty

of death is constitutionally impermissible under any and all circumstances.

## IX.

For the reasons set forth above, defendant Herman Johnson's motion to dismiss the

capital aspects of the indictment is hereby DENIED.  Johnson's motion to dismiss the

aggravating factors set forth in the May 23, 2007 Notice of Intent, or for evidentiary

hearings, is hereby DENIED.

23

SO ORDERED.

Dated:  June 29, 2009

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 29, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk