UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

        CASE NO. 05-CR-80337
        HONORABLE GEORGE CARAM STEEH

HERMAN NORMAN JOHNSON,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S 28 U.S.C. § 2255 MOTION
(DOC. #258) AND DENYING CERTIFICATE OF APPEALABILITY**

Federal prisoner Herman Norman Johnson ("Johnson"), appearing *pro se*, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Johnson killed Waad Murad ("Murad"), the owner and operator of Metro Car Company ("Metro Car"), a used car dealership located on Woodward Avenue near Seven Mile Road in Detroit, to prevent Murad from communicating with federal authorities about an ongoing illegal drug investigation. A jury found Johnson guilty of:

Count One: 18 U.S.C. §§ 1512(a)(1)(C), 1512(k) - Conspiracy to Commit Murder to Prevent a Person From Providing Information Concerning a Federal Crime to a Law Enforcement Officer of the United States

Count Two: Murder to Prevent a Person From Providing Information Concerning a Federal Crime to a Law Enforcement Officer of the United States- Aiding and Abetting, 18 U.S.C. § 1512(a)(1)(C); 18 § U.S.C. 2(a)

Count Three: 18 U.S.C. § 922(g) - Felon in Possession of a Firearm

(Doc. #35). The court imposed concurrent life sentences for the conspiracy and murder convictions and a concurrent 10-year sentence for the felon-in-possession conviction.

-1-

Before the court is Johnson's § 2255 motion. Johnson challenges the sufficiency and particularity of the affidavit used in support of the search warrant that led to the acquisition of evidence of his crimes. In particular, Johnson claims that his rights under the Fourth Amendment to the United States Constitution were violated because there was no probable cause to search his home. In addition, Johnson claims he received ineffective assistance of counsel. The government has filed a response to Johnson's motion. For the reasons set forth below, Johnson's motion shall be denied.

## I. BACKGROUND

In 2004, the Drug Enforcement Administration ("DEA") began investigating Metro Car and Murad after multiple vehicles registered to or purchased from Metro Car "were stopped in various parts of the country and found to be carrying large quantities of cocaine or currency." (Doc. #249 at 1). The investigation resulted in a raid of Metro Car pursuant to a federal warrant in November 2004. The raid "uncovered records of persons in the Detroit drug community who had purchased luxury cars under false names from Metro Car." (*Id.* at 2).

Murad agreed to cooperate with the DEA in its investigation. Shortly after, on March 17, 2005, Murad was killed while he sat in the driver's seat of his vehicle, with another person sitting passenger, in Metro Car's parking lot. Two individuals approached the vehicle. One fired a single shot into Murad's head, killing him.

DEA Special Agent Edward Donovan ("Agent Donovan") began an investigation into Murad's killing. Murad's family publicly offered a $50,000 reward for information leading to the apprehension of those responsible for Murad's killing, and, shortly after, an unknown woman called Metro Car stating that she had information about the shooting and knew

where the shooter lived. The woman also knew two other people (her boyfriend and his associate) who had information about the shooting. Agent Donovan spoke with all three informants on multiple occasions.

Through his communications with the informants, Donovan learned that the person responsible for Murad's shooting 1) went by the name "Little Herm" or "Little Hearn"; 2) was a dark-skinned 30-to-35-year-old bald black male with a disfigured lip, 5'4" to 5'5" tall, and weighing between 130 and 155 pounds; 3) lived at 14270 Strathmoor in Detroit; 4) used the cell phone number 313-478-4974; 5) bragged about "taking care of some work on Woodward" and that he was "paid in stacks" for shooting Murad, in the days following Murad's killing; and 6) that he was in possession of the gun (a chrome revolver) used to kill Murad and was attempting to get rid of it or trade it. The informants told Agent Donovan that they had been to Little Herm's home and that they had communicated with him by telephone. It was also communicated to Agent Donovan that officers needed to move fast or risk Little Herm disposing of the chrome revolver used in Murad's killing.

In addition to communicating with the informants, Agent Donovan obtained cell phone tower records attributed to the phone number associated with Little Herm. The records showed that, at the time of Murad's killing, the phone bearing the number 313-478-4974 was registered to Frederick Harrison. The cell phone was drawing reception from the closest cell phone tower to where Murad was killed at the time the shooting occurred. In addition, cell phone records confirmed phone calls going back and forth between the informants and the cell phone number associated with Little Herm to support the informants' statements that they knew Little Herm.

At some point during the investigation, Agent Donovan, in communicating with other agents, believed that Little Herm's real name was "Zachary Hearn." Agent Donovan asked one of the informants if Little Herm's real name was Zachary Hearn. The informant replied, "I think that is it. I'm not sure, but I think that's it." The informant proceeded to tell Agent Donovan that he knew Little Herm by his nickname only and was unsure of Little Herm's actual name.

On March 29, 2005, a joint task force executed a search warrant at 14270 Strathmoor in search of items related to Murad's killing. The affidavit in support of the search warrant referred to the person expected to be found in the home with the weapon used in Murad's killing as "Zachary Hearn Jr.," not "Little Herm" or "Little Hearn." Johnson was found inside the home holding a cell phone with the number 313-478-4974. In addition, three firearms were found inside the home, one of them a chrome revolver matching the description of the gun used in Murad's killing. Officers discovered defendant's name to be Herman Johnson, not Zachary Hearn, Jr.

Subsequent to the raid, one of the informants was shown a picture of Johnson and confirmed that Johnson was the individual that the informant knew as "Little Herm." Agents also learned that Johnson was a convicted felon with an outstanding parole violation. Johnson was arrested for being a felon in possession of a firearm and on the outstanding parole violation.

Johnson was initially charged in a one-count indictment with being a felon in possession of a firearm. Johnson moved to suppress the items seized during the execution of the search warrant on the grounds that 1) the affidavit in support of the search warrant lacked sufficient allegations for the magistrate judge to conclude that the unnamed

informants were credible or provided reliable information; and 2) the search warrant lacked particularity in that it did not designate the specific unit to be searched at 14270 Strathmoor, which Johnson claimed to be a multiple-occupancy structure. During the course of an evidentiary hearing which spanned multiple days, Johnson was charged in a three-count superceding indictment with 1) conspiring to murder Murad to prevent him from providing information about a federal crime to law enforcement officers in violation of 18 U.S.C. §§ 1512(a)(1)(C) and 1512(k); 2) aiding and abetting/murdering Murand to prevent him from providing information about a federal crime to law enforcement officers in violation of 18 U.S.C. § 1512(a)(1)(C) and 18 § U.S.C. 2(a); and 3) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

At the conclusion of the evidentiary hearing, the court denied Johnson's motion to suppress. The court explained:

> [D]efendant's motion fails on both grounds for reasons that the Court finds to be overwhelming. The corroboration for the information provided by the two informants identified as DPD-1 and DPD-2 were fairly described on the record by [the government] in . . . closing. The cell phone records were provided. It was very compelling information. The detail given to the officers by these informants was all consistent with the circumstances known about the murder, and the fact that one of those informants was sent into the residence to report on the condition of the residence shortly before the search was undertaken, all provided more than ample evidence from which a magistrate could reasonably and essentially be compelled to conclude that probable cause for the location of the evidence in that residence was good.

(Doc. 229 at 121). As to Johnson's argument that the affidavit did not particularly describe the unit of the multi-story home to be searched, the court stated that the characteristics of the residence (one front door, one mail box, one address) supported the fact that it was a single-family dwelling. (*Id.* at 123). The motion to suppress was, therefore, denied.

At a later date, Johnson, through new counsel, filed a second motion to suppress and request for a *Franks* hearing.[1] The court denied Johnson's motion insofar as it challenged the affidavit in support of the search warrant, citing to the testimony from the previous evidentiary hearing, and denied Johnson's request for a *Franks* hearing. Johnson also sought to suppress four statements he made to police officers after his arrest. After taking testimony regarding this issue, the court denied Johnson's motion finding that there was sufficient testimony supporting the conclusion that Johnson's statements were made voluntarily and were not a product of any coercive police activity. (Doc. 170 at 135).

After proceeding to trial on the three-counts charged in the superceding indictment, the jury found Johnson guilty as charged on all three counts. A judgment was entered against Johnson accordingly.

Johnson appealed the judgment against him to the Sixth Circuit. (Doc. #223). First, Johnson challenged the court's denial of his motions to suppress. He argued that the warrant affidavit lacked sufficient allegations to verify the credibility and reliability of the informants. Specifically, Johnson averred that the warrant affidavit wrongly stated that the informants named "Zachary Hearn, Jr." as the person who shot Murad. The Sixth Circuit rejected Johnson's argument. The court of appeals explained "that the affidavit contained sufficient police corroboration of the information DPD-1 and -2 provided to support a finding of probable cause." (Doc. #249 at 11). This independent police corroboration, the Sixth Circuit explained, included: 1) the cell phone number and address provided by the informants; 2) the fact that the informants stated that the alleged shooter still had the

---

[1] A *Franks* hearing is an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

...
...
...

chrome firearm used to shoot Murad in his possession; and 3) the cell tower data corroborating both that the informants were associates of the alleged shooter and that the alleged shooter was in the area of Metro Car at the time Murad was shot. (*Id.* at 12, 13). Based on this evidence, the Sixth Circuit concluded that "the warrant affidavit showed a fair probability that evidence of Murad's shooting would be found at 14270 Strathmoor." (*Id.* at 13) (citations omitted).

Second, Johnson argued that the informants came forward in response to the reward offered by Murad's family, and, therefore, they were not credible nor reliable. The Sixth Circuit rejected this argument concluding that, "[a]lthough the warrant affidavit does not mention . . . that the reward money motivated [the informants] to come forward, those omissions are not relevant to the determination whether the police independently corroborated the information [the informants] provided." (*Id.* at 12).

Third, Johnson asserted that the informants provided "shared," not independent, information. Again, the Sixth Circuit rejected this argument finding that "the fact that the anonymous informants did not provide corroboration for each other is not relevant to whether the police independently corroborated the information they provided." (*Id.* at 13).

Fourth, Johnson argued that "because the warrant affidavit did not state that either informant actually saw the weapon in the residence, [the informants] did not provide a nexus between the weapon and 14270 Strathmoor." Disagreeing with Johnson, the Sixth Circuit explained:

> The affidavit states that DPD-1 told police that, during conversations with the alleged shooter regarding his involvement in Murad's shooting, the alleged shooter told DPD-1 that the firearm used to shoot Murad was in his possession. The affidavit also stated that during a March 28, 2005, conversation DPD-2 had with the alleged shooter at (313) 478-4974, DPD-2

>   told the alleged shooter that he was interested in purchasing the gun, and the alleged shooter directed DPD-2 to come to 14270 Strathmoor the following morning to see the weapon.

(*Id.* at 13).

Finally, Johnson argued that the warrant affidavit's references to Zachary Hearn, Jr. warranted a *Franks* hearing, and that this court erred in declining to hold such a hearing. Affirming this court's decision, the Sixth Circuit stated that "the affidavit's references to the alleged shooter as 'Zachary Hearn, Jr.' (as opposed to 'Little Herm' or 'Little Hearn') were neither intentional or made with reckless disregard of the truth." (*Id.* at 15) (citation omitted). The Sixth Circuit explained that "the mistaken name does not rise to the level of a false statement, nor is it material to a finding of probable cause." Therefore, the court of appeals concluded that a *Franks* hearing was unnecessary.

Johnson filed a writ of certiorari in the United States Supreme Court. (Doc. #252). The writ was denied. (Doc. #253).

Having exhausted his direct appeal, Johnson moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. #258).[2]

## II. STANDARD OF REVIEW

A prisoner seeking relief under § 2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). To prevail on a claim of constitutional error, such as a claim

---

[2] The court allowed Johnson an extension of time to file his § 2255 habeas petition based on equitable tolling principles. (Docs. #255 & 257).

-8-

of ineffective assistance of counsel, the defendant must prove that his lawyer was ineffective by a preponderance of the evidence. *Id.* Moreover, the defendant must show that the constitutional error had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993); *Wright v. United States*, 182 F.3d 458, 463 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

### III. ANALYSIS

In the § 2255 petition now before the court, Johnson argues that: 1) the affidavit in support of the search warrant was not supported by any reliable evidence, and, therefore, violated the Fourth Amendment to the United States Constitution; 2) the "good faith" exception does not remedy the fact that the warrant affidavit was insufficient to establish probable cause; and 3) he received ineffective assistance of counsel violating his due process rights. Based on these claims, Johnson seeks an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), or *Strickland v. Washington*, 466 U.S. 668 (1984). An evidentiary hearing is not necessary where "the record conclusively shows that the petitioner is entitled to no relief." *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citations omitted). Because the record is clear that Johnson is not entitled to the relief sought, no evidentiary hearing shall be held.

**A. Johnson's Challenges To The Warrant Affidavit Are Without Merit**

Johnson's first two purported grounds for relief under § 2255 repeat the same arguments made in support of his motions to suppress before this court. This court has already rejected Johnson's arguments twice before, and the Sixth Circuit affirmed the court's decision on direct appeal. Johnson's arguments fare no better today. For the same reasons the court previously explained, and for the same reasons the Sixth Circuit affirmed this court's decision, Johnson's challenges to the affidavit in support of the search warrant do not support his § 2255 petition. In short, it does not matter that the affidavit in support of the search warrant referred to "Zachary Hearn, Jr." instead of Johnson. This mistake played no role in establishing probable cause to search Johnson's home. The informants were credible and reliable, and the information they provided was independently corroborated by the government. Johnson did not succeed in convincing the Sixth Circuit on direct appeal that his challenges to the search warrant affidavit required reversal. He likewise has failed to clear the "significantly higher hurdle" required to prevail on his § 2255 motion. *Frady*, 456 U.S. at 166. The motion, therefore, will not be granted on this basis.

**B. Johnson's Claim Of Ineffective Assistance Of Counsel Has No Merit**

Johnson's § 2255 motion also raises a claim of ineffective assistance of counsel, although it is not clearly decipherable from the papers exactly what actions or nonactions taken by counsel Johnson claims to be ineffective. The motion avers only that Johnson "received ineffective assistance of counsel and that his due process . . . rights were violated." (Doc. 258 at 8). Johnson does not state why he believes he received ineffective assistance of counsel. The Sixth Circuit and other courts reject ineffective assistance claims that rest upon conclusory, unsupported allegations of counsel's deficient

performance.  See Black v. United States, No. 09-cr-20093, 2014 WL 2894285, at *3 (June 26, 2014) (collecting cases).

To the extent that Johnson's ineffective assistance of counsel claim is premised on his belief that he was entitled to a Franks hearing, or that the search warrant affidavit was not supported by probable cause, his claim fares no better.  To succeed on his ineffective assistance of counsel claim, Johnson must show both that counsel's representation fell below an objective standard of reasonableness and that he was prejudiced as a result. Strickland v. Washington, 466 U.S. 668, 687 (1984).  Courts must "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Id. at 690.  Here, counsel for Johnson sought two times to suppress the evidence obtained in the search of Johnson's home based on Johnson's argument that the search affidavit did not establish probable cause. In addition, counsel for Johnson asked the court to hold a Franks hearing.  Therefore, Johnson has failed to show that counsel was ineffective.  In any event, as explained above, Johnson's arguments regarding the Franks hearing and search warrant affidavit lack merit.

## IV. CONCLUSION

For the reasons stated above, Johnson's § 2255 motion (Doc. #258) is **DENIED.**

Under Fed. R. App. P. 22, an appeal may not proceed absent a certificate of appealability ("COA") issued under 28 U.S.C. § 2253.  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The court finds no substantial showing of the denial of a constitutional right

was made by defendant in these proceedings, and accordingly the issuance of a certificate of appealability is **DENIED.**

**IT IS SO ORDERED.**

Dated:  January 15, 2015

>  s/George Caram Steeh
>  GEORGE CARAM STEEH
>  UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 15, 2015, by electronic and/or ordinary mail and also on Herman Johnson #39558-039, USP Terre Haute P.O. Box 33, Terre Haute, IN  47808.

s/Barbara Radke
Deputy Clerk